IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) |
| vs. | ) Criminal No. 16-181 |
| | ) Judge Nora Barry Fischer |
| ANGELO MASSIE, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM ORDER**

I.    INTRODUCTION

Presently before the Court are Defendant Angelo Massie's pro se Motion for Compassionate Release and supporting documents, (Docket Nos. 584; 585), including the Defendant's pertinent medical records, as well as the Government's Response in opposition and supporting documents, (Docket Nos. 599; 600). Although Defendant was ordered to submit a Reply by July 9, 2021 and the Court extended his deadline to July 19, 2021, he has failed to do so by the date of this Order. (Docket Nos. 601; 606; 607). As more than 30 days has elapsed since the passing of the deadline, the Court considers the motion to be fully briefed and ripe for disposition.

In his motion, Defendant seeks to reduce the 15-year sentence imposed by this Court pursuant to an 11(c)(1)(C) plea agreement to time served, or to serve the remainder of his sentence on home confinement,[1] based on his physical health, specifically his obesity and his previous

---

[1] This Court has previously held that "a release to home confinement 'is a change in the location where the inmate serves his sentence, . . . [and] only the BOP, not this Court, has the statutory authority to release him to home confinement under Section 3621(b).'" *United States v. Richards*, Crim. No. 15-108, Docket No. 322 at 1-2 (W.D. Pa. June 19, 2020) (citing *United States v. Horner*, Crim. No. 11-31, Docket No. 200 at 4 (W.D. Pa. May 28, 2020)). *See also United States v. Rodriguez-Collazo*, No. 14-cr-00378, 2020 WL 2126756, at *3 (E.D. Pa. May 4, 2020) (observing

1

COVID-19 diagnosis, combined with the ongoing risk that the COVID-19 pandemic poses to inmates at FCI Elkton. (Docket No. 584). The Government counters that compassionate release is not warranted because Defendant's medical records do not demonstrate an extraordinary and compelling reason to grant relief, and because the § 3553(a) factors and Sentencing Guideline § 1B1.13(2) do not otherwise justify a reduction in his sentence for the very serious criminal charges at issue in this case. (Docket No. 600). After careful consideration of the parties' positions and for the following reasons, Defendant's Motion [584] is denied, as the Court declines to exercise its discretion to reduce his sentence at this time.

II.     LEGAL STANDARD

The Court initially turns to the prevailing legal standard. "[A]s a general matter, a court cannot modify a term of imprisonment after it has been imposed without specific authorization." *McMillan v. United States*, 257 F. App'x 477, 479 (3d Cir. 2007); *see also Dillon v. United States*, 560 U.S. 817, 819 (2010) ("A federal court generally may not modify a term of imprisonment once it has been imposed."). One such specific authorization is the First Step Act's amendment of 18 U.S.C. § 3582. *See United States v. Pawlowski*, 967 F.3d 327, 329 (3d Cir. 2020). Pursuant to that provision, a court may modify a defendant's term of imprisonment if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i).

> In addition, the reviewing court must consider: (1) whether the defendant has exhausted the appropriate administrative remedies; (2) the factors set forth in 18 U.S.C. § 3553(a) to the extent that they are applicable; and (3) whether such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

*United States v. Burrus,* Crim. No. 19-284, 2020 WL 3799753, at *4 (W.D. Pa. Jul. 7, 2020) (citing

---

that the district court lacks authority to grant a defendant's request for home confinement "because that authority rests solely with the BOP" and collecting decisions that have so held). Accordingly, Defendant's alternative request that he be released to home confinement is denied.

*Graves*, Crim. No. 17-318, Docket No. 28 (W.D. Pa. Jun. 10, 2020) (Hornak, J.) and 18 U.S.C. § 3582(c)(1)(A)(i)).

   III.   DISCUSSION

At the outset, the Government concedes that Defendant has sufficiently exhausted administrative remedies as he made a request to the Warden at FCI Elkton which was denied. (Docket No. 600, at 3). However, the Government opposes the remaining factors and his request for compassionate release. (Docket No. 600). Hence, it is Defendant's burden to show: "extraordinary and compelling reasons" justifying such reduction, 18 U.S.C. § 3582(c)(1)(A)(i); that the section 3553(a) factors support the requested reduction; and "whether such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." *Burrus*, 2020 WL 3799753, at *4 (citation omitted). In addition, under the relevant policy statement in the Guidelines, the Court is to consider whether the defendant is a danger to the safety of any other person or the community as provided in 18 U.S.C. § 3142(g). *See* U.S.S.G. § 1B1.13(2).

   A.   *Extraordinary and Compelling Reasons*

In this Court's estimation, Defendant has not sufficiently demonstrated that the Court should exercise its discretion to grant him compassionate release based on his medical ailments and the general risks posed by the COVID-19 pandemic, including the spread of COVID-19 at the institution where he is housed. The Court of Appeals has held that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *cf. United States v. Roeder*, 807 F. App'x 157, 161 (3d Cir. 2020) ("the existence of some health risk to every federal prisoner as the result of this global pandemic does

not, without more, provide the sole basis for granting release to each and every prisoner within our Circuit.").

The Court recognizes that FCI Elkton has largely mitigated the spread of COVID-19 recently, as the BOP is currently reporting no active positive cases among inmates and staff members at that facility. *See* https://www.bop.gov/coronavirus/ (last visited 8/20/2021). Additionally, this Court has recognized that "[t]he existence of the virus in a prison – even the level of infection at [an institution where an outbreak has occurred] – is not sufficient to establish extraordinary and compelling circumstances without some proof that the defendant is at more severe risk for infection than his fellow inmates." *United States v. Williams*, No. CR 18-335, 2020 WL 4934659, at *5 (W.D. Pa. Aug. 24, 2020) (quoting *United States v. Thorton*, Crim. No. 2:18-167, 2020 WL 4368155, at *4 (W.D. Pa. Jul. 29, 2020)). Thus, the Court must look to Defendant's underlying characteristics, medical conditions, and other risk factors to determine whether extraordinary and compelling circumstances exist which would justify his early release.

Defendant's medical records reflect that his Body Mass Index ("BMI") on April 7, 2020 was 32.46 kg/m$^2$, (Docket No. 585, at 27), which places Defendant above the threshold for obesity. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed 8/20/2021). Obesity increases the likelihood that an individual could become severely ill if he contracts COVID-19, and the CDC notes that "[t]he risk of severe COVID-19 illness increases sharply with elevated BMI." (*Id.*). Thus, Defendant argues his obesity amounts to an extraordinary and compelling reason to reduce his sentence in light of the COVID-19 pandemic. (Docket No. 584). The Government responds that while Defendant's obesity might otherwise amount to extraordinary and compelling circumstances justifying his release, his

vulnerability to COVID-19 has been greatly reduced since he has received both doses of the Pfizer vaccine. (Docket Nos. 599, at 14; 600).

Having considered the parties' arguments in light of the evidence of record, the Court finds that the evidence provided shows that Defendant's condition would be classified as low-level obesity. Even without the added protections that the COVID-19 vaccinations provide, this Court has previously declined to grant compassionate release on the grounds of low-level or borderline obesity, absent some other underlying serious medical condition. *See United States v. Robinson*, Crim. No. 16-185, Docket No. 572 at 5 (W.D. Pa. Feb. 19, 2021) (denying compassionate release to a prisoner whose measured BMI in November of 2020 was 30.6, and who also had an underlying condition of asthma); *United States v. Jones*, Crim. No. 15-87, Docket No. 3257 at 5 (W.D. Pa. Apr. 26, 2021) (denying compassionate release on the basis of low-level obesity and pre-diabetes); *cf. United States v. Drue Williams, III*, Crim No. 16-181, Docket No. 538 (W.D. Pa. Nov. 5, 2020), *aff'd*, 844 Fed. Appx. 485 (3d Cir. Apr. 22, 2021) (affirming denial of compassionate release based on Defendant's obesity). Therefore, it is this Court's opinion that Defendant's low-level obesity, alone, does not amount to extraordinary and compelling circumstances which justify his compassionate release.

Defendant also argues that his prior COVID-19 diagnosis, which resulted in his hospitalization, combined with the risk of reinfection constitutes an extraordinary or compelling reason to grant him compassionate release. (Docket No. 584). The medical records submitted by Defendant confirm that he contracted COVID-19 in April of 2020, was briefly hospitalized for treatment between April 7 and April 12, 2020, and was ultimately diagnosed with bilateral pneumonia as a result of the COVID-19 infection. (Docket No. 585, at 2, 21, 34, 69, 93). Per his medical records, Defendant's chief complaints to medical providers were fatigue, cough, and

5

shortness of breath. (*Id.*, at 35). He exhibited a mild fever, which never rose higher than 99°F. (*Id.*, at 3, 31). While Defendant indicates that "initially it was feared that indeed he would lose his life" as a result of his COVID-19 diagnosis, the medical records repeatedly indicate that he was stable, not in acute distress, and not in need of treatment in the Intensive Care Unit. (Docket Nos. 585; 585, at 15, 23).

While Defendant likens a second COVID-19 diagnosis to a "death sentence," he has not provided any evidence which shows that he is at an increased risk for severe symptoms or death if infected with COVID-19 a second time. *See United States v. Alford*, Docket No. 08-cr-374, 2021 WL 1561508 at *8 (W.D. Pa. Apr. 21, 2021) (denying compassionate release where "[t]here is no evidence in the record about whether [defendant] faces a similar risk of grave illness or death if he is *reinfected*.") (emphasis in original). Likewise, Defendant's medical records show that he has not sought additional medical care to address any residual respiratory issues since he was discharged from the hospital in April of 2020. In fact, the most recent medical records before the Court indicate that Defendant's SaO2 (oxygen saturation) reading on March 15, 2021 was 98%, and his pneumonia was listed as "resolved" at that time. (Docket No. 599, at 1, 2).

All told, the record before the Court indicates that Defendant is a mostly healthy 43-year-old with low-level obesity, who fully recovered following a COVID-19 diagnosis in April of 2020 which resulted in a brief period of hospitalization. *See Alford*, 2021 WL 1561508 at *8 (denying compassionate release, despite defendant's high risk of suffering grave illness or death as a result of contracting COVID-19, in light of the fact that defendant had actually contracted COVID-19 and survived without suffering grave illness or death). In addition to recovering from his initial COVID-19 diagnosis, Defendant has now been fully vaccinated to prevent reinfection and to help protect him from the risks of severe illness or death should he be reinfected. (Docket No 599, at

14). As this Court has previously noted, "vaccination significantly mitigates the risks associated with a subsequent COVID-19 infection." *United States v. Bowman*, Crim. No. 06-cr-00369, Docket No. 91, at 5 (W.D. Pa. Jan. 29, 2021).

For all of these reasons, Defendant has failed to show that he "suffers from a terminal illness or an ailment, which, coupled with the potential spread of COVID-19, would make [him] unable to provide self-care in a correctional environment." *United States v. Wallace*, Crim. No. 19-49, Civ. No. 20-637, 2020 WL 4003663, at *4 (W.D. Pa. Jul. 15, 2020) (citing *United States v. Hammond*, Crim. No. 18-184, 2020 WL 2126783, at *4 (W.D. Pa. May 5, 2020)). Therefore, it is this Court's opinion that Defendant has failed to meet his burden of proving that extraordinary or compelling circumstances justify his early release.

  B.  *Section 3553(a) Factors*

Even if Defendant had met his burden to show extraordinary and compelling reasons for release, the risks presented by the COVID-19 pandemic do not outweigh the other § 3553(a) factors supporting the 15-year term of incarceration in his case, of which he has served less than one third of his sentence.[2] See *Pawlowski*, 967 F.3d at 330 ("we cannot conclude that the District Court acted unreasonably in determining that the substantial sentencing reduction required for granting compassionate release here—a reduction from 15 years to less than two years—would be inconsistent with the § 3553(a) factors."). The Court has once again carefully considered all of the § 3553(a) factors and finds that Defendant's "history and characteristics" and "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, … to

---

[2] The Government notes that Defendant's current projected release date is March 19, 2030. (Docket No. 600, at 3).

provide just punishment for the offense[, and] to afford adequate deterrence to criminal conduct," do not justify a sentence reduction here. 18 U.S.C. §§ 3553(a)(1), (a)(2)(A)-(B).

To this end, the 15-year sentence Defendant received accounts for the gravity of the offense conduct, as he pled guilty to conspiracy to possess with intent to distribute 1 kilogram or more of heroin, a very dangerous and potent narcotic. While the 15-year sentence was the statutory mandatory minimum in this case, Defendant faced a guideline range a guideline range of potentially between 24 - 30 years, and up to a maximum sentence of life in prison. (Docket No. 450, at 22, 24-25, 37). Beyond that, Defendant could potentially have been subject to an additional period of incarceration if not for his decision to accept the Rule 11(c)(1)(C) plea agreement, as he acknowledged the uncharged conduct of possession of ammunition by a convicted felon. (Docket No. 450, at 23). Thus, the record reflects that the 15-year sentence Defendant bargained for and received in this matter is far below the sentence the Court could have imposed for this very serious offense. The Court believes that such sentence remains sufficient, but not greater than necessary to meet all of the goals of sentencing in this case. See 18 U.S.C. § 3553(a)(1).

To his credit, Defendant accepted responsibility for his conduct at the time of his sentencing. However, there remains a need to deter Defendant from committing additional crimes because the prior leniency shown to Defendant for offenses involving controlled substances and firearms, including shorter terms of imprisonment, early parole, and early termination of supervised release, were insufficient to dissuade him from engaging in further distribution of very dangerous controlled substances, such as heroin. See 18 U.S.C. § 3553(a)(2); see also 18 U.S.C. § 3142(g). Defendant's conviction in the present matter represented his third conviction for dealing heroin and/or crack cocaine. (Docket No. 455). As this Court has repeatedly observed, drug trafficking poses a substantial risk of harm to the community. See, e.g., United States v. Atkins,

8

2015 WL 4920831, at *7 (W.D. Pa. Aug. 18, 2015). Further, Defendant has also previously been convicted of a federal firearm charge. (Docket No. 455). Accordingly, it appears to the Court that there remains a clear need to deter Defendant from committing additional crimes under 18 U.S.C. § 3553(a)(2)(B), and that Defendant's repeated criminal conduct shows that he continues to pose a significant threat to the community under 18 U.S.C. § 3553(a)(2)(C). Finally, the 15-year sentence provides general deterrence to others and also promotes respect for the law while the substantial sentence reduction requested by the defense to less than 5 years' incarceration "would be inconsistent with the section 3553(a) factors." *Pawlowski*, 967 F.3d at 330.

IV. CONCLUSION

For all of these reasons,

IT IS HEREBY ORDERED that Defendant's Motion seeking compassionate release [584] is DENIED.

*s/Nora Barry Fischer*
Nora Barry Fischer
Senior U.S. District Judge

Date:   August 23, 2021

cc/ecf:   All counsel of record.

>   Angelo Massie
>   BOP # 0812-6068
>   FCI Elkton
>   P.O. Box 10
>   Lisbon, OH 44432
>   (via U.S. mail)